PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA WILLIAMS, | ) | |
| | ) | CASE NO. 4:18CV0899 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| MENTOR WORLDWIDE LLC, | ) | **AND ORDER** |
| | ) | [Resolving ECF Nos. 22, 43, 45, 47, 48, |
| Defendant. | ) | and 49] |

The following motions are pending:

Defendant Mentor Worldwide LLC's Motion to Dismiss Plaintiff's Amended
Complaint (ECF No. 22);

*Pro Se* Plaintiff Jessica Williams' Motion to Strike Defendant's Notice of
Supplemental Authority (ECF No. 43);

*Pro Se* Plaintiff's Motion for Judgment on the Pleadings (ECF No. 45);

*Pro Se* Plaintiff's Motion to Strike Defendant's Opposition to Plaintiff's Motion
for Judgment on the Pleadings (ECF No. 47);

Defendant's Motion to Strike Under Rule 12(f) (ECF No. 48); and,

*Pro Se* Plaintiff's Motions to Strike Defendant's Motion to Strike Under Rule
12(f) and "to Strike Defendant's Opposition to Strike Plaintiff Jessica Williams'
Motion to Strike Plaintiff's Motion for Judgment on the Pleadings" (ECF No. 49).

(4:18CV0899)

The Court has been advised, having reviewed the record, the parties' briefs,[1] and the applicable law. For the reasons that follow, the Court grants the motion to dismiss, denies the motion to strike Defendant's notice of supplemental authority, grants Defendant's motion to strike under Rule 12(f), and denies as moot the other two (2) motions.

## I. Background

*Pro Se* Plaintiff was first surgically implanted with Mentor Saline Breast Implants in 2002. Amended Complaint (ECF No. 17) at ¶ 9. Over the next several years, Plaintiff had five additional surgeries, all of which involved Mentor Saline Breast Implants. ECF No. 17 at ¶ 8. Plaintiff underwent these additional surgeries for many reasons, such as needing replacement implants due to ruptures, a hematoma, and a post-operative infection. ECF No. 17 at ¶¶ 10-21. In 2011, years after her surgeries, Plaintiff alleges that she started to experience various injuries, including arthritis, joint swelling, skin ulcers, depression, shortness of breath, vision loss, severe fatigue, Sjogren's syndrome, discoid lupus, and cognitive problems. ECF No. 17 at ¶ 23. Plaintiff alleges she was eventually diagnosed with Systemic Sclerosis in 2014. ECF No. 17 at ¶ 26.

Plaintiff asserts four (4) claims against Defendant for injuries allegedly relating to her Mentor Saline Breast Implants: (1) failure to warn, (2) negligence (failure to warn), (3) manufacturing defect, and (4) "device malfunction." ECF No. 17 at ¶¶ 30-34. All of Plaintiff's

---

[1] The Court has considered Defendant's Notice of Supplemental Authority (ECF No. 41). If pertinent and significant authorities come to a party's attention after the party's brief has been filed, a party may promptly advise the Court by serving and filing a Notice of Supplemental Authority that sets forth the citation(s). *See, e.g.*, Fed. R. App. P. 28(j). However, this option is not to be used to reargue issues already raised in the briefs.

(4:18CV0899)

claims and allegations relate solely to the safety and effectiveness of her Mentor Saline Breast

Implants.

The Mentor Saline Breast Implants are Class III medical devices as defined by 21 C.F.R.

§ 878.3530. The most stringent controls apply to Class III devices under the Medical Device

Amendments of 1976 ("MDA"), 21U.S.C. § 360c *et seq.*, to the Federal Food, Drug, and

Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.* *See Riegel v. Medtronic, Inc.*, 552 U.S. 312,

316 (2008). Because of their Class III status, the commercial sale of Mentor Saline Breast

Implants to healthcare professionals was conditioned upon the device receiving Premarket

Approval ("PMA") from the Food and Drug Administration ("FDA"). *See* 21 C.F.R. §

878.3530(c).

On November 12, 1999, Defendant submitted a PMA application for its Saline Breast

Implants.[2] On May 10, 2000, the FDA found that the Mentor Saline Breast Implants as designed,

manufactured and labeled were safe and effective, and the FDA issued an Approval Order.[3]

Thereafter, Mentor Saline Breast Implants could only be sold to healthcare professionals in

---

[2] *See* PMA Approval Order and Summary of Safety and Effectiveness for
P990075 (ECF No. 22-3). Courts regularly take judicial notice of approval letters and
other documents on the FDA's website. *See Kodger v. Zimmer Biomet Holdings, Inc.*,
No. 1:17-CV-1350, 2017 WL 4348997, at *1 (N.D. Ohio Sept. 29, 2017) (taking notice
of FDA approval letter attached to defendant's motion to dismiss). Under federal law,
courts are required to take judicial notice of PMA approvals, which are reflected in the
Federal Register. *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be
judicially noticed. . . .").

[3] *See* Federal Register/Vol. 66, No. 130, July 6, 2001 Notices, TABLE 1: List of
Safety and Effectiveness Summaries for Approved PMAs Made Available from January
1, 2001 to March 31, 2001 (ECF No. 22-4).

3

(4:18CV0899)

accordance with the design, manufacturing, and labeling specifications approved by the FDA.

ECF No. 22-4; *see also* 21 C.F.R. § 801.109. These approvals remain in effect and have never

been suspended or revoked.

## II. Standard of Review

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take

all well-pleaded allegations in the complaint as true and construe those allegations in a light most

favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A

cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility

in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not

required to include detailed factual allegations, but must provide more than "an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid

of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted

as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The

plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer

possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. Where a complaint

4

(4:18CV0899)

pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged    but it has not 'show[n]'    'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). The Court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted). Pleadings filed by *pro se* litigants are liberally construed. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this lenient treatment has limits, as "courts should not have to guess at the nature of the claim asserted." *Wells*, 891 F.2d at 594.

### III. Choice of Law

Generally, "[a] federal court sitting in diversity must apply the choice-of-law rules of the forum state." *Nationwide Mut. Fire Ins. Co. v. Gen. Motors Corp.*, 415 F. Supp.2d 769, 774-75 (N.D. Ohio 2006) (Dowd, J.) (citing *Klaxon Co. v. Stentor Elec. Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987)). Therefore, the Court must apply Ohio's choice-of-law rules. Ohio follows the Restatement (Second) of Conflict of Laws when determining choice of law issues. *See Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3d 339, 341-41 (1984). Under the Restatement, "a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Id.* at 342; *see also Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 500 (6th Cir. 2015).

5

Ohio courts apply the following factors from § 145 of the Restatement to determine which state has the most significant relationship to the lawsuit: (1) the place of the injury, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship between the parties, if any, is located. *See Morgan*, 15 Ohio St.3d at 342. When a plaintiff's injuries occur in more than one state, the court should apply the law of the state where most of the injuries occurred or can be attributed. *See Byers v. Lincoln Elec. Co.*, 607 F. Supp.2d 840, 847 (N.D. Ohio 2009) (O'Malley) (applying Texas law because plaintiff spent nearly 20 years in Texas and only a few months in other states during the time period he alleged his injuries occurred).

Although Plaintiff was implanted and received treatment in both Louisiana and Florida, Louisiana is the state with the most significant relationship to Plaintiff and her injuries. ECF No. 17 at ¶¶ 8-26. Only her initial surgeries and two additional procedures occurred in Florida. ECF No. 17 at ¶¶ 9-10, 18-20. Most of the procedures and treatments Plaintiff received took place in Louisiana. ECF No. 17 at ¶¶ 11-17, 23-26. Particularly, Plaintiff was diagnosed and treated for Systemic Sclerosis entirely in Louisiana, which is the injury she devotes the most space to in her Amended Complaint. ECF No. 17 at ¶¶ 23-26. Additionally, Plaintiff resided in Louisiana throughout all of her implantation and removal procedures. ECF No. 17 at ¶ 6. Therefore, as Louisiana is the state where most of Plaintiff's injuries occurred, under *Byers*, the Court must apply Louisiana law to Plaintiff's claims. Furthermore, because Louisiana law applies, the adequacy of Plaintiff's claims must be analyzed under Fifth Circuit preemption law.

(4:18CV0899)

## IV. Analysis

### A.

Plaintiff's negligence and "device malfunction" claims must be dismissed under the Louisiana Products Liability Act ("LPLA") because such claims are not cognizable under the Act. The LPLA sets forth four exclusive theories of recovery against a manufacturer: (1) defect in construction or composition; (2) defect in design; (3) inadequate warning; and (4) failure to comply with an express warranty. *See McQuiston v. Boston Sci. Corp.*, No. 07-1723, 2009 WL 4016120, at *6 (W.D. La. Nov. 19, 2009) (citing La. Stat. Ann. § 9:2800.55-58). The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Stat. Ann. § 9:2800.52 ("A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter."). Louisiana courts have held that the LPLA subsumes all other causes of action against a manufacturer. *See Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 245 (E.D. La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir. 1997) ("[N]either negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer."); *Grenier v. Med. Eng'g Corp.*, 99 F. Supp.2d 759, 763 (W.D. La. 2000), *aff'd*, 243 F.3d 200 (5th Cir. 2001) (explaining that a negligence claim is "well outside the scope of the LPLA and must be dismissed"). Thus, Plaintiff's negligence and "device malfunction" claims must be dismissed.

**B.**

**1.**

The U.S. Supreme Court's decision in *Riegel* requires dismissal of all of Plaintiff's

claims. Plaintiff's claims are expressly preempted by the Medical Device Amendments

("MDA") to the FDCA. The MDA preempt additional or different state law requirements related

to the safety or effectiveness of a federally approved medical device. To ensure FDA oversight is

not controverted by state regulatory measures, the MDA contains an express preemption

provision which states in relevant part: "[N]o State or political subdivision of a State may

establish or continue in effect with respect to a device intended for human use any requirement

[¶] (1) which is different from, or in addition to, any requirement applicable under this Act to the

device, and [¶] (2) which relates to the safety or effectiveness of the device or to any other matter

included in a requirement applicable to the device under this chapter." 21 U.S.C. § 360k(a). All

of Plaintiff's claims fall squarely within the MDA's express preemption provision.

In *Riegel*, the Supreme Court construed the MDA's express preemption provision to

preempt the plaintiffs' state law claims against a PMA-approved catheter. In so doing, the court

established a two-step inquiry for determining whether state law claims are preempted by the

MDA. First, the court "must determine whether the Federal Government has established

requirements applicable to" the medical device at issue. 552 U.S. at 321. Second, if there are

applicable federal requirements, the court must then determine whether the "common-law claims

are based upon [state] requirements with respect to the device that are 'different from, or in

addition to' the federal ones, and that relate to safety and effectiveness." *Id.* at 322 (quoting 21 U.S.C. § 360k(a)).

The court concluded that both elements of its two-step inquiry were satisfied. Approval of a Class III medical device through the PMA process necessarily established "federal requirements." *Id.* at 321-23. Furthermore, "reference to a State's 'requirements' includes its common-law duties." *Id.* at 324. The court thus ruled that plaintiffs' state tort law claims against the PMA-approved catheter were preempted by the express preemption provision of the MDA. *Id.*

Following *Riegel*, "courts across the country have applied Section 360k(a) broadly, preempting all manner of claims from strict products liability and negligence . . . to breach of warranty. . . to failure to warn and manufacturing-and-design-defect . . . to negligence *per se*." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig. ("Medtronic Leads")*, 592 F.Supp. 2d 1147, 1152 (D. Minn. Jan. 5, 2009) (collecting cases). Likewise, the Fifth Circuit and Louisiana federal courts routinely apply Section 360k(a) to dismiss cases against PMA-approved Class III medical devices based on preemption. *See, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011) (dismissing manufacturing defect claim against hip implant manufacturer based on preemption); *see also Hinkel v. St. Jude Med., S.C.*, 869 F. Supp.2d 739, 746 (E.D. La. 2012) (dismissing all LPLA claims involving a spinal implant as "clearly preempted by the

(4:18CV0899)

MDA").[4]

**2.**

The first step of the preemption inquiry is the determination as to "whether the Federal Government has established requirements applicable to" the medical device at issue *i.e.* to Mentor Saline Breast Implants. *Riegel*, 552 U.S. at 321. The FDA has mandated specific requirements for the manufacture and labeling of Mentor Saline Breast Implants. The Mentor Saline Breast Implants at issue in this case is a Class III device approved by the FDA through the PMA process. *See* ECF No. 22-3. The Mentor Saline Breast Implant at issue has been manufactured and marketed pursuant to a valid and current PMA, and such approval has never been revoked, suspended, or withdrawn. *See Riegel*, 552 U.S. at 319-20 ("The FDA has the power to withdraw premarket approval based on newly reported data or existing information and must withdraw approval if it determines that a device is unsafe or ineffective under the conditions in its labeling.").

The FDA-approved specifications relative to the design, manufacture, and labeling of the Mentor Saline Breast Implants at issue are the only standard of care applicable thereto. *Id.* at 325. Therefore, any state-law products liability claims attempting to impose design, manufacturing, or labeling requirements different from, or in addition to, those approved as safe and effective by the FDA are preempted by the MDA.

---

[4] Similarly, courts within the Sixth Circuit consistently dismiss state law claims against PMA-approved Class III medical devices based on preemption. *See e.g.*, *Warstler v. Medtronic, Inc.*, 238 F. Supp. 3d 978, 987 (N.D. Ohio 2017) (dismissing negligence, manufacturing defect, and failure to warn claims against a pain pump manufacturer based on preemption ).

**3.**

The second step of the preemption inquiry is the determination of whether Plaintiff's state law claims rely on any requirement of Louisiana law applicable to Mentor Saline Breast Implants "that is 'different from, or in addition to' federal requirements and that 'relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device.'" *Riegel*, 552 U.S. at 323 (quoting 21 U.S.C. § 360k(a)). The MDA expressly preempts any state law claim that would impose different or additional duties relating to any requirement imposed through the PMA process. *Id.* at 327-28. Like the plaintiffs in *Riegel*, by alleging state law tort claims, Plaintiff is attempting to impose manufacturing and labeling requirements upon the Mentor Saline Breast Implants which conflict with, or add a greater burden to, the specific federal requirements imposed by the FDA when it was granted PMA. Plaintiff's threadbare and conclusory claims against Defendant are identical to those found to be preempted by *Riegel* and its progeny. Plaintiff's state law claims conflict with the FDA requirements for the manufacture and labeling of Mentor Saline Breast Implants and are therefore preempted.

Plaintiff's first claim for failure to warn is preempted under Riegel. Plaintiff asserts that she "was never warned of the risks involved pertaining to Mentor Worldwide LLC Saline Breast Implants," and that she "was never told of, or even read anything in regards to the dangers that Mentor Worldwide LLC Saline Breast Implants could possibly cause her post surgeries." ECF No. 17 at ¶ 30.[5] Plaintiff does not allege that the labeling of her Saline Breast Implants deviated

---

[5] Under the learned intermediary doctrine, Defendant's duty to warn is owed to the prescribing doctor, not Plaintiff. *See Brown v. Glaxo, Inc.*, 790 So.2d 35, 38 (La.

(continued...)

from the FDA-approved labeling. She nonetheless impermissibly seeks to impose labeling

requirements that go beyond what federal law requires. *See Riegel*, 552 U.S. at 327-28; *see also*

*Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 931 (5th Cir. 2006) (affirming summary

judgment of LPLA failure to warn claim against collagen plug manufacturer based on

preemption); *Cenac v. Hubbell*, No. 09-3686, 2010 WL 4174573, at *6 (E.D. La. Oct.

21, 2010) (dismissing claims against pain pump manufacturer based on preemption).

In her third claim for manufacturing defect, Plaintiff continues to assert that Defendant

"did not provide any information in regards to possible health risks associated with Mentor

Worldwide LLC Saline Breast Implants." ECF No. 17 at ¶ 33. Although packaged as a

manufacturing defect claim, Plaintiff's allegations purport to, again, challenge the labeling of her

implants. For the reasons stated above, Plaintiff's claims seeking to impose labeling

requirements that go beyond federal law are preempted. *See Riegel*, 552 U.S. at 327-28. To the

extent Plaintiff alleges her implants were defectively manufactured, Plaintiff challenges the

FDA's findings concerning the safety of Mentor Saline Breast Implants, and therefore, once

again, seeks to impose requirements that differ from federal regulations. *See id.*; *see also Funk*,

631 F.3d at 782 (dismissing manufacturing defect claim as preempted because plaintiff's claims

---

[5](...continued)
App. Ct. 2000); *Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St.3d 380, 384
(2002).

(4:18CV0899)

were conclusory and vague); *Poole v. Hologic, Inc.*, No. 10-314, 2010 WL 3021528, at \*5 (W.D. La. July 29, 2010) (same).[6]

The reasoning behind dismissal of each of Plaintiff's claims is in line with *Riegel* and its progeny. Each claim would require "judges and juries to second-guess the balancing of benefits and risks of a specific device to their intended patient population    the central role of the FDA. . . ." *Horn v. Thoratec*, 376 F.3d 163, 178 (3rd Cir 2004) (quoting the FDA's Amicus Curiae Letter Brief at 25-26). *Riegel* explicitly held that state law tort claims, including causes of action for strict liability, negligence, and breach of implied warranty, impose requirements that are different from, or in addition to, the device-specific federal requirements, and are thus preempted. *Riegel*, 552 U.S. at 324.

The same reasoning applies here. Plaintiff's Amended Complaint (ECF No. 17) is devoid of any well-pled allegations that the PMA-approved Mentor Saline Breast Implants at issue in this case were not manufactured and labeled in accordance with the specifications approved by the FDA through the PMA process. By contending that her Mentor Saline Breast Implants were, nevertheless, defective, or that Defendant's warnings were, nevertheless, inadequate, Plaintiff

---

[6] Even if Plaintiff's negligence claim was not already subject to dismissal as being subsumed under the LPLA, it would be preempted. *See Sons v. Medtronic Inc.*, 915 F. Supp.2d 776, 782 (W.D. La. 2013) (dismissing negligence claim as preempted because such claim imposes "requirements that are different from or in addition to the federal requirement of pre-market approval"). Furthermore, it is unclear what cause of action Plaintiff alleges in her device malfunction claim, but, to the extent that she claims malfunction due to a manufacturing defect or inadequate warning, the claim is preempted for the reasons stated above. *See Poole*, 2010 WL 3021528, at \*5 (dismissing manufacturing defect and inadequate warning claims against medical device company as preempted).

13

(4:18CV0899)

seeks to impose requirements regarding the manufacturing or labeling of the implants that are different from, or in addition to, what the FDA approved. Moreover, Plaintiff's Amended Complaint (ECF No. 17) is composed of speculative and conclusory allegations that are inadequately pled. Therefore, Plaintiff has also failed to allege facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547.

**4.**

Finally, numerous courts — both before and after *Riegel* — have held state law claims related to PMA-approved breast implants are preempted. *See, e.g.*, *Vieira v. Mentor Worldwide LLC*, ---F. Supp.3d---, No. CV 19-04939-AB (PLAx), 2019 WL 3500331 (C.D.Cal. Aug. 1, 2019) (dismissing plaintiffs' failure-to-warn and manufacturing defect claims as preempted and with prejudice); *Jacob v. Mentor Worldwide LLC*, ---F. Supp.3d---, No. CV 19-01484-AB (PLAx), 2019 WL 3500325 (C.D.Cal. Aug. 1, 2019) (dismissing plaintiffs' failure-to-warn and manufacturing defect claims as preempted and with prejudice); *Jacob v. Mentor Worldwide LLC*, 389 F. Supp.3d 1024 (M.D. Fla. 2019) (finding plaintiff failed to allege a parallel claim surviving preemption); *Ebrahimi v. Mentor Worldwide LLC*, No. CV 16-7316-DMG (Ksx), 2018 WL 6829122 (C.D.Cal. Dec. 27, 2018) (dismissing manufacturing defect claim with prejudice as preempted); *Shelp v. Allergan, Inc.*, C18-1427-JCC, 2018 WL 6694287 (W.D.Wash. Dec. 20, 2018) (dismissing all of plaintiffs' claims against Mentor as expressly preempted and with prejudice); *Laux v. Mentor Worldwide, LLC*, No. 2:16-cv-01026-ODW(AGR), 2017 WL 5186329, at *3-4 (C.D. Cal. Nov. 8, 2017) (granting defendant's motion for summary judgment on preemption in case involving saline implants); *Clore v. Mentor Worldwide, LLC*, No.

(4:18CV0899)

4:17-cv-00003-CVE-TLW (N.D.Okla. April 7, 2017) (dismissing claims regarding saline implants as preempted) (ECF No. 22-5); *Malonzo v. Mentor Worldwide, LLC*, No. C 14 01144 JSW, 2014 WL 2212235 (N.D. Cal. May 28, 2014) (same); *Ford v. Mentor Worldwide, LLC*, No. 2:13-cv-06317 (E.D. La. Dec. 17, 2013) (same) (ECF No. 22-6); *Harris v. Mentor Worldwide LLC*, No. 12-cv-916 (E.D. Cal. Aug. 21, 2012) (same) (ECF No. 22-7); *Herbert v. Mentor*, No. 04-413 (MLC), 2007 WL 2893387, at *3-4 (D.N.J. Sept. 28, 2007) (granting summary judgment on preemption grounds); *Cottengim v. Mentor Corp.*, No. 05-161-DLB2007 WL 2782885, at *2-5 (E.D. Ky. Sept. 24, 2007) (same).

## C.

In *Pro Se* Plaintiff's Motion to Strike Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings, Plaintiff alleges that Defendant and Defense counsel "feel entitled to have Plaintiff Jessica Williams' case dismissed because these other basic, most likely bribed, and definitely biased courts dismissed six recent cases" against Defendant. ECF No. 47 at PageID #: 527. The Court agrees with Defendant that this impertinent and scandalous allegation of unethical and criminal conduct by Defendant, Defense counsel and/or various state and federal judges, is unacceptable. ECF No. 48 at PageID #: 547.

Plaintiff is required to comply with Fed. R. Civ. P. 11. "By its own terms, Rule 11 applies to *pro se* litigants as well as to attorneys." *Weiler v. IRS*, No. 1:17CV2226, 2019 WL 2331763, at *3 (N.D. Ohio May 14, 2019) (Baughman, M.J.), *report and recommendation adopted*, 2019 WL 2346915 (N.D. Ohio May 31, 2019) (Nugent, J.). "The Rule 11 standard 'takes into account the special circumstances that often arise in pro se situations[. But] pro se

(4:18CV0899)

filings do not serve as an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *In re Polyurethane Foam Antitrust Litig.*, 165 F. Supp.3d 664, 666 (N.D. Ohio 2015) (quoting *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir.1988)) (Zouhary, J.).

Accordingly, *Pro Se* Plaintiff's Motion to Strike Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings (ECF No. 47) is stricken from the record. *See, e.g.*, *Bletas v. Deluca*, No. 11 Civ. 1777, 2011 WL 13130879, at *11-13 (S.D.N.Y. Nov. 15, 2011) (pro se plaintiff alleging defendants "'possibly' bribed" the judge was sanctioned under Rule 11); *Kelly v. City of Topeka, Street Maintenance*, No. 97-4079-SAC, 1998 WL 1054225, at *1 (D. Kan. Dec. 4, 1998) (pro se plaintiff's unfounded accusation that the court accepted a bribe in exchange for granting defendant's motion for summary judgment "borders on contempt"); *Davis v. TRM Copy Centers, Corp.*, No. 88 C 0990, 1988 WL 92921, at *1-3 (N.D. Ill. Aug. 16, 1988) (striking paper filed by pro se plaintiff that accused judge of racism and taking bribes as impertinent and scandalous under Rule 12(f) and referring plaintiff for Rule 11 sanctions).

### V. Conclusion

Defendant Mentor Worldwide LLC's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 22) is granted;

*Pro Se* Plaintiff Jessica Williams' Motion to Strike Defendant's Notice of Supplemental Authority (ECF No. 43) is denied;

*Pro Se* Plaintiff's Motion for Judgment on the Pleadings (ECF No. 45) is denied as moot;

*Pro Se* Plaintiff's Motion to Strike Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings (ECF No. 47) is stricken;

16

(4:18CV0899)

Defendant's Motion to Strike Under Rule 12(f) (ECF No. 48) is granted; and,

*Pro Se* Plaintiff's Motions to Strike Defendant's Motion to Strike Under Rule 12(f) and "to Strike Defendant's Opposition to Strike Plaintiff Jessica Williams' Motion to Strike Plaintiff's Motion for Judgment on the Pleadings" (ECF No. 49) is denied as moot.

IT IS SO ORDERED.


 September 30, 2019                              */s/ Benita Y. Pearson*
Date                                             Benita Y. Pearson
                                                 United States District Judge